**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THOMAS J. G.,         ) | |
|        ) | |
|       Plaintiff,    ) | Case No. 1:23-cv-16014 |
|   v.       ) | |
|        ) | Magistrate Judge Jeannice W. Appenteng |
| FRANK BISIGNANO,    ) | |
| Commissioner of Social Security,   ) | |
|        ) | |
|       Defendant.   ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas J. G. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After review of the record and the parties' respective arguments, the Court denies plaintiff's motion and grants the Commissioner's motion.

**BACKGROUND**

Plaintiff applied for DIB benefits on January 30, 2018 alleging disability since August 1, 2010 due to psoriatic arthritis, psoriasis, degenerative lumbar disc disease, high blood pressure, neck pain, anxiety disorder, migraine headaches, and tinnitus. Administrative Record ("R.") 208, 271. Plaintiff subsequently amended the alleged onset date to March 31, 2017. R. 228, 927. Born in June 1969, plaintiff was 47 years old as of the alleged onset date, making him a younger person (under age

50). 20 C.F.R. § 404.1563(c); R. 208. By the September 30, 2019 date last insured, plaintiff had changed age categories to a person closely approaching advanced age (age 50-54). 20 C.F.R. § 404.1563(d); R. 208. Plaintiff is a college graduate and lives in a townhouse with his mother. R. 272, 951. He was employed for many years as a graphic designer but he quit working due to his conditions and has not engaged in substantial gainful activity since the March 31, 2017 alleged disability onset date. R. 271-72, 540.

The Social Security Administration denied plaintiff's application at all levels of review and he appealed to the District Court. On September 14, 2022, the Court reversed and remanded the case to the Commissioner for further proceedings, finding that the assigned administrative law judge ("ALJ") needed to "either incorporate non-exertional restrictions into the RFC [residual functional capacity] that account for Claimant's mild limitations in each of the four broad areas of mental functioning, or explain why such limitations are unwarranted." R. 1043. *See also Thomas G. v. Kijakazi*, No. 20 CV 5860, 2022 WL 4234967, at *5 (N.D. Ill. Sept. 14, 2022). On February 8, 2023, the Appeals Council vacated the final decision of the Commissioner and remanded the case to a new ALJ "for further proceedings consistent with the order of the court." R. 1048. The ALJ held a supplemental hearing on July 19, 2023 and heard testimony from plaintiff, who was represented by counsel, and from vocational expert Lee Knutson (the "VE").[1] R. 947-78.

---

[1] The hearing was held telephonically by consent of the parties.

On September 15, 2023, the ALJ found that plaintiff's juvenile rheumatoid arthritis, psoriatic arthritis, rheumatoid arthritis, and degenerative disc disease of the cervical and lumbar spine are severe impairments, but that they do not alone or in combination with plaintiff's non-severe mental and physical impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 930-34. After reviewing the evidence, the ALJ concluded that plaintiff has the RFC to perform a reduced range of sedentary work with various postural, manipulative, and environmental restrictions. R. 934-38. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could perform plaintiff's past relevant work as a graphic designer. R. 938. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the September 30, 2019 date last insured. R. 939. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ (1) failed to comply with the Court's order to either include mental restrictions in the RFC or explain their omission, (2) erred in finding him capable of frequent handling and fingering, and (3) improperly concluded that his arthritis does not

3

meet or equal Listing 14.09.[2] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A.     Standard of Review

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its]

---

[2] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

4

judgment for the ALJ's determination so long as substantial evidence supports it."
*Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994
F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97,
103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the
most minimal of articulation requirements," and ALJs need only provide "an
explanation for how the evidence leads to their conclusions that is sufficient to allow
us, as a reviewing court, to assess the validity of the agency's ultimate findings and
afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54
(internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical
bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471
(7th Cir. 2024).

**B.     Analysis**

      **1.     Mental Impairments**

Plaintiff argues that the case must be reversed or remanded because the ALJ
ignored the Court's directive to incorporate mental restrictions in the RFC or
explain why these limitations are unwarranted. Dkt. 12 at 7-12; Dkt. 17 at 2. This
argument fails because the ALJ articulated why plaintiff does not require mental
limitations in the RFC, and that decision is supported by substantial evidence.

The ALJ found that prior to the September 30, 2019 date last insured,
plaintiff's anxiety and depression were non-severe impairments causing no
limitations in any area of mental functioning and requiring no related work

restrictions.[3] R. 931-33. In reaching this conclusion, the ALJ explained that the medical record generally documented minimal objective findings. In February, August, and October 2016, plaintiff reported that his anxiety was "well controlled" with medication and he denied having a low mood. R. 566, 568, 570. In June, September, and December 2017, plaintiff's treating psychiatrist Lee Weiss, M.D., noted that plaintiff had been doing "very well for the past 8 years" with medication. R. 543, 545, 759, 931. At all three exams, Dr. Weiss described plaintiff as stable with normal findings aside from an anxious and depressed mood. R. 540-41, 543-44, 546, 931. From 2016 through 2019, moreover, other physicians similarly documented unremarkable mental assessments, with plaintiff himself routinely denying that he was experiencing mental symptoms. R. 474, 558, 568, 570, 648, 660, 677, 783, 797, 802, 807, 931.

Plaintiff ignores this evidence and fails to explain how it supports specific mental restrictions not found in the RFC. *See Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018) ("It was [plaintiff]'s burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."). Instead, plaintiff argues that the ALJ should have accepted the mental limitations set forth in an August 2, 2019 opinion from his treating rheumatologist, Darcy Majka, M.D. Dkt. 12 at 9-10; R. 753.

---

[3] Plaintiff's objection that the ALJ improperly "changed" her mental findings, had a "semantic change of heart," and "forgot to edit her wording" from the prior decision has no merit. Dkt. 12 at 8 and n.3. The Appeals Council vacated the prior decision and "the ALJ (a new ALJ) is not bound by it." *Tareski v. Kijakazi*, No. 22-CV-481-PP, 2023 WL 4594488, at *18 (E.D. Wis. July 18, 2023).

Since plaintiff filed his claim in January 2018, the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also Robert J. L. v. O'Malley*, No. 20 CV 50444, 2024 WL 809091, at *2 (N.D. Ill. Feb. 27, 2024). Instead, the ALJ was required to determine the "persuasiveness" of each medical opinion considering: "supportability, consistency, the medical professional's relationship with the claimant (including the length of the treatment relationship, frequency of examinations, and purpose and extent of the treatment relationship), specialization, and other facts that tend to support or contradict a medical opinion." *Cain v. Bisignano*, 148 F.4th 490, 496-97 (7th Cir. 2025) (citing 20 C.F.R. § 416.920c(c)(1)-(5)). "The most important of these factors are supportability and consistency"; indeed, "[t]he ALJ must explain its consideration of these two factors but need not address the remaining factors." *Id.* at 497.

Dr. Majka treated plaintiff for psoriatic arthritis and opined that pain, fatigue, and other symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks. R. 753. Dr. Majka also stated that plaintiff would need to take unscheduled breaks and would be absent more than four days per month due to his symptoms. R. 754. The ALJ discussed this opinion but observed that it was based largely on plaintiff's subjective complaints. R. 937. For example, Dr. Majka indicated that plaintiff "states" he is "too fatigued to work 8 hours," and "reports" that his anxiety and pain are severe.

R. 753-54, 937. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("[I]f the treating physician's opinion is . . . based solely on the patient's subjective complaints, the ALJ may discount it."). Plaintiff does not address this aspect of the ALJ's decision.

The ALJ also explained that Dr. Majka's opinion was inconsistent with the objective evidence and her own treatment notes. R. 937. As discussed earlier, physicians routinely documented minimal to no mental symptoms with no mention of impaired concentration or focus. *See Alejandrina A. v. Kijakazi*, No. 20 CV 4089, 2023 WL 2539239, at *12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)) (ALJ properly discounted treating physician's statement that was "inconsistent with other objective evidence in the record."). In addition, Dr. Majka's notes reflect that plaintiff was "doing well" physically despite some reduced extension in the wrists and contracture of the right elbow. R. 770, 773, 790, 793, 937. *See Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes."). Given this evidence, the ALJ did not reversibly err in rejecting Dr. Majka's conclusion that plaintiff is incapable of even simple work and would be absent or off-task an excessive amount of time.

Rather than confront the lack of objective evidence of mental deficits, plaintiff argues that the ALJ erred in considering his subjective statements and placed too much emphasis on his activities of daily living. Dkt. 12 at 9. The Court disagrees. The ALJ acknowledged plaintiff's testimony that he has panic attacks a few times

per week lasting 5 to 30 minutes, as well as difficulty concentrating and focusing due to pain and fatigue. R. 931, 958, 961, 992. But the ALJ also noted that these issues have existed since plaintiff was 25 years old, yet he remained capable of substantial gainful activity for many years with no evidence of any deterioration in his functioning as of the alleged disability onset date. R. 931. Moreover, as previously discussed, plaintiff's claimed limitations conflict with the objective evidence that plaintiff was doing well with minimal mental symptoms notwithstanding any physical complaints. *See Thorps v. Astrue*, 873 F. Supp. 2d 995, 1006 (N.D. Ill. 2012) (citing *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)) ("[A] patient's subjective complaints are not required to be accepted insofar as they clashed with other, objective medical evidence in the record.").

The ALJ further explained that prior to the September 30, 2017 date last insured plaintiff was capable of performing a variety of daily activities that required focus and concentration, including driving, playing computer games, shopping online, managing finances, attending appointments alone, and comprehending treatment recommendations. R. 931-32. "[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). And contrary to plaintiff's assertion, the ALJ did not equate his ability to engage in the activities with an ability to work full-time. Dkt. 12 at 9. Rather, the ALJ "used [plaintiff's] reported activities to assess the credibility of h[is] statements concerning the intensity, persistence, or limiting

effects of h[is] symptoms consistent with the applicable rules." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Plaintiff has not demonstrated that this assessment was "patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) ("As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong.").

Viewing the record as a whole, the ALJ provided good reasons for finding that plaintiff's non-severe mental impairments do not result in any related functional limitations. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (courts "apply a very deferential standard of review to the ALJ's decision"). "Although plaintiff may disagree with how the ALJ weighed the evidence and the conclusions the ALJ drew from that evidence, this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 CV 50290, 2024 WL 4347193, at *2 (N.D. Ill. Sept. 30, 2024) (quoting *Gedatus*, 994 F.3d at 900). The ALJ complied with the Court's remand order and plaintiff's request to remand the case again for further consideration of his mental RFC is denied.

### 2. Handling and Fingering

Plaintiff also argues that the case must be reversed or remanded because the ALJ erred in finding him capable of frequent handling and fingering with both upper extremities. Dkt. 12 at 12-14; Dkt. 17 at 3. The Court is satisfied that the ALJ provided good reasons for that decision which are supported by substantial evidence. The ALJ acknowledged plaintiff's testimony that he can only use his

10

hands for 5 to 10 minutes at a time before needing to rest for 20 to 30 minutes, but explained that plaintiff's complaints are inconsistent with objective medical findings. R. 936-38. Aside from some limited flexion in the wrists, physical exams from 2016 through the fall of 2018 were routinely normal with full strength and no synovitis, hand swelling, or hand deformities. R. 470, 475, 478, 484, 489, 494, 501-02, 509, 558, 560, 562, 564, 566, 569, 570, 648-49, 652, 660, 664, 797-98, 802, 807, 936-37. X-rays of plaintiff's hands taken on March 31, 2017 showed only mild areas of joint space narrowing and questionable mild erosion involving the distal left ulna. R. 528.

In October 2018, plaintiff started treating with rheumatologist Dr. Majka. At appointments on October 8, 2018, April 10, 2019, and July 19, 2019, Dr. Majka documented reduced extension in the wrists and contracture of the right elbow, but she saw no synovitis or tenderness and described plaintiff as doing well despite his complaints of experiencing some numbness and tingling in his arms in the middle of the night and when sitting. R. 762, 763, 766, 769, 770, 773, 789, 790, 793, 936-37. Based on her evaluations, Dr. Majka opined that plaintiff has only mild reduction in his ability to sustain fine and gross movements. R. 753, 938. Medical expert Gilberto Munoz, M.D., echoed that sentiment at the prior administrative hearing on September 17, 2019, testifying that plaintiff can frequently handle and finger with both hands. R. 36-37. The ALJ found that opinion persuasive. R. 937. *See Stephanie A. v. Kijakazi*, No. 21-CV-775-SPM, 2022 WL 1153464, at \*8 (S.D. Ill. Apr. 19, 2022) (quoting SSR 96-6p, 1996 WL 374180, at \*2) ("State agency medical and

11

psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Act.").

Plaintiff challenges Dr. Munoz's assessment, arguing that he gave "vague and somewhat non-responsive answers" to questions. Dkt. 12 at 13. Dr. Munoz made clear, however, that he based his conclusion on the fact that the record contained no evidence of synovitis or joint deformity that would justify greater restrictions. R. 40. Plaintiff fails to explain how the objective records cited above reflect an inability to handle and finger more than occasionally. Dkt. 12 at 13-14. Moreover, plaintiff does not point to another physician of record who imposed greater manipulative limitations. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) ("The lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal.").

This Court will not reweigh evidence or substitute its judgment for the ALJ's determination. *Warnell*, 97 F.4th at 1052-53. Viewing the record as a whole, the ALJ reasonably concluded that plaintiff is capable of frequent handling and fingering and that decision is supported by substantial evidence. *See Karr*, 989 F.3d at 511 (substantial evidence is "not a high threshold"). Plaintiff's request to remand the case for further consideration of this issue is denied.

### 3. Listing Level Severity

Plaintiff finally argues that the ALJ erred by concluding that his inflammatory arthritis does not meet or equal Listing 14.09. Dkt. 12 at 14-15; Dkt.

12

17 at 4. "The Listings involve cases where the impairment(s) is so severe that there is no need to evaluate the limits of what a claimant can actually do; thus, if a claimant satisfies the requirements of a Listing, she is presumptively disabled and no further consideration is required." *Acera B. v. Saul*, No. 20 CV 1674, 2021 WL 2222605, at *3 (N.D. Ill. June 2, 2021). Plaintiff "bears the burden of proving his condition meets or equals a listed impairment" and "must satisfy all of the criteria in [a] Listing in order to receive an award of disability insurance benefits." *Cathy D. H. v. O'Malley*, No. 21 CV 5992, 2024 WL 3177431, at *3 (N.D. Ill. June 26, 2024) (quoting *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004), and *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999)).

Plaintiff contends that the ALJ's discussion of Listing 14.09 lacks adequate explanation and improperly relies on unsupported and unclear testimony from Dr. Munoz. Dkt. 12 at 14-15; R. 35. This argument fails because plaintiff, who was represented by counsel at the hearing, did not challenge that aspect of Dr. Munoz's testimony or seek to clarify his Step 2 determination. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) (a represented claimant "is presumed to have made his best case before the ALJ"). More importantly, plaintiff makes no attempt to demonstrate that the severity of his inflammatory arthritis meets or equals the specific criteria of Listing 14.09 as he is required to do. *Rice*, 384 F.3d at 369. Finally, plaintiff fails to identify any physician who opined that he is presumptively disabled at Step 2 of the analysis. Even assuming the ALJ made some unspecified error in discussing the

listing, "we do not reverse if the claimant fails to show that he meets the criteria for that listing." *Sosinski v. Saul*, 811 F. App'x 380, 381 (7th Cir. 2020).

Viewing the record as a whole, the ALJ's Step 2 determination is supported by substantial evidence. Plaintiff's motion to remand the case for further consideration of this issue is denied.

### CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment [12] is denied and the Commissioner's motion for summary judgment [15] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

Date: 5/4/2026

**Jeannice W. Appenteng**
**United States Magistrate Judge**

14